UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| JUDE KEELEN | * | CIVIL ACTION |
|---|---|---|
| | * | |
| VERSUS | * | NO. 11-1596 |
| | * | |
| METROPOLITAN PROPERTY & CASUALTY | * | SECTION "L"(3) |
| INSURANCE COMPANY | * | |

# ORDER & REASONS

The Court has pending before it Defendant Metropolitan Property and Casualty Insurance Company's Motion for Summary Judgment (Rec. Doc. 47) and Plaintiff's Motion to Exclude Expert Testimony and Report of George A. Hero, III (Rec. Doc. 48). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

## I.  BACKGROUND

This case arises from a claim filed by Plaintiff Jude Keelen under his homeowners insurance policy for fire damage. Plaintiff owned a house at 215 Drury Lane in Slidell, Louisiana. Defendant Metropolitan insured the house under a homeowners policy. Plaintiff was the only named insured. On May 19, 2010, a fire (or possibly more than one fire) damaged the Drury Lane property.[1]

It is undisputed that Plaintiff lived at the Drury Lane property intermittently before 2009

---

[1] Defendant submits a report from an expert who opines that the fire was the result of arson. Plaintiff moves to exclude or limit that expert's opinions. The substance of the opinions will be discussed at greater length below.

and had not lived there for more than a year before the fire.[2] In 2009, Plaintiff rented the property to his brother, Gregory Keelen; his sister-in-law, Chastity Keelen; and Mrs. Keelen's three children. By February 10, 2010, Chastity Keelen had moved out of the Drury Lane property (evidently due to marital difficulties with Gregory Keelen) and discontinued the utilities. The record suggests that she removed the furniture and most other contents of the house. Gregory Keelen was arrested for violating the terms of his parole on April 26, 2010 and was incarcerated from that date until after the fire occurred.

One of the key factual issues in this case is whether the Drury Lane property was occupied or vacant from March 20 through May 19, 2010, the sixty days preceding the fire. Metropolitan takes the position that the property was entirely vacant during that period. Plaintiff takes the position that his brother, Gregory Keelen, lived at the property at least some days between the end of February, 2010, and April 26, 2010, when he was incarcerated.

In support of its position, Metropolitan submits a variety of competent summary judgment evidence supporting the conclusion that Gregory Keelen had not resided at the Drury Lane property in the sixty days preceding the fire. Utility records show that the water and electricity for the Drury Lane property were discontinued by February 10, 2010. Plaintiff gave a recorded statement a month after the fire in which he stated that his brother had "been out of this house probably way before March," and that his brother did not have a key to the house. (Rec.

---

[2]Evidently Plaintiff maintained a homeowners' policy on the Drury Lane property, despite not residing there, by stating to Defendant that "I still reside at 215 Drury Lane, Slidell, LA" and requesting that the homeowners' policy be renewed. (Rec. Doc. 47-2 at 93). At his deposition, Plaintiff explained that he still used 215 Drury Lane as his mailing address although he did not live there, and that in the letter requesting renewal "maybe [he] shouldn't have used reside for that word – for that." (Rec. Doc. 47-2 at 21).

Doc. 47-2 at 125). Gregory Keelen gave a recorded statement to Defendant after the fire in which he stated that he did not live at the property after the electricity was off, but that he kept some items in the garage and would go there to pick up his mail. (Rec. Doc. 47-2 at 162-65). In addition, one basis for the revocation of Gregory Keelen's parole on April 26 was "mov[ing] from [his] place of residence," which was listed in the terms of his parole as 215 Drury Lane. (*See* Rec. Doc. 47-2 at 168-72). Chastity Keelen, Gregory's wife and Plaintiff's sister-in-law, testified at her deposition that Gregory Keelen spent the nights with her at a new apartment between the end of February and his incarceration on April 26, 2010. (Rec. Doc. 47-2 at 17-18).[3] Alaina Mitchell, a neighbor, testified that the house had been vacant for at least two months before the fire and that she and another neighbor would mow the overgrown grass. (Rec. Doc. 47-2 at 176-77). She also testified that two dogs were kept in the backyard during that period. *Id.*

In opposition, Plaintiff submits competent summary judgment evidence suggesting that Gregory Keelen did spend some time at the Drury Lane property between February, 2010, and April 26, 2010. Plaintiff, at his own deposition, testified that Gregory Keelen lived at the Drury Lane property "up until he went to jail," and that he saw his brother at the property on weekends. (Rec. Doc. 51-6 at 10). Gregory Keelen was also deposed and testified that he kept clothing, tools, and a dog at Drury Lane, and that he would spend four nights a week there despite the lack of electricity. (Rec. Doc. 51-2 at 10, 12).[4] Plaintiff also submits testimony from neighbors.

---

[3]Plaintiff suggests that Gregory and Chastity Keelen "are currently in the middle of a bitter divorce" and that her testimony should be understood in that light.

[4]Q. How often would you spend the night at Drury in March 2010?
A. About four times a week. In the dark.

3

Damion Davis, who lived across the street, testified that he would see Gregory Keelen at the property "every other day" after Chastity Keelen moved out, up until he was incarcerated. (Rec. Doc. 51-3 at 11, 13). Rebecca Relan, another nearby neighbor, saw cars at the Drury Lane property after Chastity Keelen left, as well as people going in and out of the house. (Rec. Doc. 51-4 at 7-8). John Relan saw cars parked at the house overnight in the time period around sixty days before the fire. (Rec. Doc. 51-5 at 9).

After the fire, Plaintiff made a claim under the homeowners policy. Defendant denied the claim, citing a number of policy provisions. First, Defendant cited the coverage definition of the policy which limits coverage to damage to a dwelling used as a private residence by the named insured. Defendant stated that coverage therefore did not exist because Plaintiff was not personally residing at the property at the time of the fire but was rather renting the premises to his brother, or letting his brother reside there. Second, Defendant cited a coverage exclusion for damage from vandalism or mischief caused while the property was unoccupied for more than sixty days before the loss; Defendant stated that the property had been vacant for the sixty days preceding the fire. Plaintiff filed suit in Civil District Court for the Parish of Orleans, alleging entitlement to payment on the policy. Defendant removed to this Court.

---

Q. You previously told Metropolitan that you did not – you were not living at the Drury property after the utilities – let me finish – after the utilities were shut off.
A. (Nods affirmatively.)
Q. Is that correct?
A. I wasn't living there, but I'd go there and sleep. You know? I wasn't living there like a family thing. I was there, but I wasn't – I'd go there and shower, feed my dog, get my – I was doing work over at the house. I was still doing mechanic work. People pull up and get their cars fixed, stuff like that. But as far as me living in there with my furniture, no. After she left, took everything, all she did was left my clothes and my tools and my dog there.

(Rec. Doc. 51-2 at 12).

4

## II. PRESENT MOTIONS

The Court has two motions pending before it. First, Defendant Metropolitan moves for summary judgment on the issue of coverage. Metropolitan contends that there are no genuine disputes of fact that Plaintiff was not using the property as his private residence at the time of the loss, and that the property had been unoccupied or vacant for sixty days before the loss. Therefore, Defendant argues that the loss is not covered according to the unambiguous language of the policy. Plaintiff opposes the motion, arguing that there are factual issues as to how long the property had been unoccupied, and that the residence requirement is ambiguous or superseded by the Louisiana Standard Fire Insurance Policy.

Second, Plaintiff moves to exclude one of Defendant's witnesses, Mr. George A. Hero, III. Plaintiff argues that Mr. Hero's opinions that the house was unoccupied and that the fire was caused by arson are inadmissible as irrelevant, prejudicial, or not properly the subject of expert testimony. Defendant responds that the opinions are relevant to its policy defenses and admissible under the Federal Rules of Evidence.

## III. LAW AND ANALYSIS

### A. Defendant's Motion for Summary Judgment on Coverage

#### 1) Standard on Motions for Summary Judgment

A district court can grant a motion for summary judgment only when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The

court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted). Cross-motions for summary judgment such as these "must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004).

### 2) Interpretation of Insurance Policies

The basis of this Court's jurisdiction is diversity of citizenship. Thus, Louisiana law applies. Under Louisiana law, insurance policies must be interpreted in accordance with the rules for interpreting contracts in general. *Cadwallader v. Allstate Ins. Co.*, 02-1637, p. 3 (La. 6/27/03); 848 So. 2d 577, 580 ("An insurance policy is a contract between the parties and should be construed using the general rules of interpretation set forth in the Louisiana Civil Code."). Additionally, the words and phrases used in an insurance policy are to be construed using their

6

plain, ordinary, and generally prevailing meaning. La Civ. Code art. 2047 ("The words of a contract must be given their generally prevailing meaning."). Courts applying Louisiana law are not permitted to interpret an insurance policy in a manner that would threaten to modify what is reasonably contemplated by the policy's unambiguous terms. La. Civ. Code art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.").

**3)    Summary Judgment Based on the "Residence Premises" Provision**

With respect to Plaintiff's claim for damage to the Drury Lane dwelling itself, Defendant asserts that the policy does not cover damage to a dwelling not used by the named insured as his or her private residence. The relevant portions of the policy read as follows:

> COVERAGE A – DWELLING
> 1.   Dwelling Owners. If your dwelling is a one, two, three, or four family dwelling, we cover:
>      A.   the dwelling used by you on the residence premises;
> ...
> "Residence premises" means:
> 1.   a one, two, three or four family ***dwelling used as a private residence by you*** and named in the Declarations. This includes the private structures and private approaches....
> This does not include any portion of a premises used for business purposes.

(Rec. Doc. 47-2 at 32-33) (emphasis added).[5] Thus, Defendant argues that because Plaintiff had not lived at the Drury Lane property for more than a year before the fire, the property was not being used as a private residence by Plaintiff and damage to the dwelling is not covered under the policy.

Plaintiff offers two arguments in opposition to summary judgment based on the residence

---

[5]The policy emphasizes certain defined terms. Those emphases are omitted for the purpose of clarity.

7

requirement. First, Plaintiff argues that the residence requirement is ambiguous. "A contract is ambiguous only if its terms are unclear or susceptible to more than one reasonable interpretation, or the intent of the parties cannot be ascertained from the language employed." *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 517 (5th Cir. 2010). The policy covers "the dwelling owned by you on the residence premises," and defines "residence premises" as "a one, two, three or four family dwelling ***used as a private residence by you*** and named in the Declarations." (Rec. Doc. 47-2 at 32) (emphasis added). Plaintiff cursorily argues that "[t]hese policy provisions are anything but clear" and should be interpreted against Metropolitan. (Rec. Doc. 51 at 5). But Plaintiff does not offer any other reasonable alternative interpretation of the meaning of "used as a private residence by you," nor does he articulate precisely how the terms of the policy are unclear.[6] The language is sufficiently clear, and similar language has been enforced as unambiguous by other courts. *See, e.g. Varsalona v. Auto-Owners Ins. Co.*, 637 S.E.2d 64 (Ga. Ct. App. 2006). The private residence requirement is not ambiguous.

Second, Plaintiff relies on *Dixon v. First Premium Insurance Group*, 934 So. 2d 134 (La. App. 2006) and its interpretation of the Standard Fire Insurance Policy terms established in La. Rev. Stat. § 22:1311. Section 22:1311(F) sets forth the terms of the Louisiana Standard Fire Insurance Policy, which are automatically incorporated by reference into all fire insurance policies. *See* § 22:1313; *see also Osborn v. Nat'l U. Fire Ins. Co.*, 632 so. 2d 1158, 1161 (La.

---

[6]The policy covers damage to a "dwelling owned by you on the residence premises," and defines residence premises as "a dwelling used as a private residence by you." Thus, it seems that a dwelling *is* the residence premises as well as being *on* the residence premises. This is curious, and the Court does not address whether it might have consequences in some other factual situation. But assuming this renders the policy ambiguous, the ambiguity does not plausibly expand coverage to a dwelling (or a residence premises) *not* used as a primary residence by the named insured.

8

1994) (explaining that the Standard Fire Insurance Policy provisions "are mandatory and ... a fire insurance policy must be written either in conformity with the statute or in a manner which is equivalent to or exceeds the coverage provided by statute"). One mandatory provision relates to coverage for loss when a property is vacant or unoccupied for more than sixty days:

> Unless otherwise provided in writing added hereto, [the insurer] shall not be liable for loss occurring:
> ...
> (b) While a described building, whether intended for occupancy by owner or tenant, is vacant, or unoccupied beyond a period of sixty consecutive days....

La. Rev. Stat. § 22:1311(F).

The Louisiana First Circuit Court of Appeal issued an opinion interpreting this mandatory provision and its effect on a "residence premises" provision in a homeowners policy. In *Dixon v. First Premium Insurance Group*, the plaintiffs owned a home insured under a homeowners policy with a similar "residence premises" provision.[7] *See* 934 So. 2d at 139. The plaintiffs moved out of their insured home in December, 1999; a tenant began renting it in January, 2000; and a fire damaged the building a month after the tenant moved in. *See id.* at 136-37. The insurance company denied the claim because the plaintiffs were not residing at the property at the time of the loss. On appeal, the court "acknowledge[d] this language in the ... policy concerning 'residence premises,'" but instead looked to the "sixty-day grace period [that] is statutorily mandated wherein an insurance company is effectively prevented from terminating coverage unless the insured property remains vacant or unoccupied beyond a period of sixty

---

[7]The policy in *Dixon* covered loss to the "'residence premises' shown in the Declaration," and defined "residence premises" as the "one family dwelling, other structures, and grounds ... ***where you reside*** and which is shown as the 'residence premises' in the Declarations.'" 934 So. 2d at 139 (emphasis added)

9

consecutive days." *See id.* at 139-40. Applying the statutory sixty-day grace period from § 22:1311(F), the court concluded that because **the tenant** was living in the property in the month before the fire, the "house was not vacant or unoccupied beyond the aforementioned sixty-day grace period." *Id.* The court therefore impliedly held that the sixty-day vacancy provision in the Standard Fire Insurance Policy superseded or negated the "residence premises" provision in the policy.[8]

Plaintiff argues that this case is "identical to *Dixon*" and that the sixty-day vacancy/occupancy provision in the Standard Fire Insurance Policy invalidates the residence requirement in his policy. Defendant argues that the Court is not bound by *Dixon*, which is a Louisiana appellate court decision, and should not follow its reasoning. Further, Defendant argues that *Dixon* is either wrong or distinguishable because in this case, the residence premises condition is entirely consistent with the SFIP vacancy/occupancy provision and both requirements can and should be enforced.

Sitting in diversity, this Court's obligation is to apply Louisiana substantive law. *See, e.g. Wiltz v. Bayer CropScience, Ltd. P'ship*, 645 F.3d 690, 695 (5th Cir. 2011). The Fifth Circuit has explained the process by which the federal courts should determine the content of Louisiana law:

> When faced with unsettled questions of Louisiana law, we adhere to Louisiana's Civilian decision-making process by first examining primary sources of law, namely, Louisiana's Constitution, codes, and statutes. This is because the primary basis of Louisiana's Civil law is legislation and not the prior decisions of its courts. In the absence of a definitive resolution in the State's primary sources, however, we look next to the final decisions of the Louisiana Supreme Court. Only in the absence of such a final decision must we make an "*Erie* guess" as to

---

[8]The Court could locate no subsequent opinion citing or relying on *Dixon* for this proposition.

> how that court would resolve the issue if presented with the same case. Although we do not disregard the decisions of Louisiana's intermediate courts unless we are convinced the Louisiana Supreme Court would decide otherwise, *we are not strictly bound by them*.

*Id.* (emphasis added).

The Court has considered *Dixon* but does not feel bound by it. The thrust of *Dixon* was the vacancy issue; here, it is the residence requirement. Furthermore, *Dixon* does not offer a persuasive reason why the sixty-day grace period for vacancy/occupancy should supersede the personal residence requirement in the policy. Insurance policies that "are not equivalent to or do not exceed the terms of the standard fire policy" have the terms of the standard policy incorporated by operation of law. La. Rev. Stat. § 22:1313(B), (C). But there is no term in the Standard Policy that relates to residence requirements; that is to say, nothing in § 22:1311(F) dictates that a fire insurance policy cannot limit coverage to buildings used for certain purposes. Section 22:1311(F) excludes coverage for loss when a building "whether intended for occupancy by owner or tenant" is vacant for more than sixty days; the Standard Fire Insurance Policy clearly contemplates that insurance policies may cover buildings occupied by their owners or by tenants, but it does not mandate that policies cover both situations. Hence, it is a common and unquestioned practice that insurers issue different policies for dwellings depending on whether the property owner lives at the property (a homeowners' policy) or rents it (a rental dwelling policy). *See Y'Barbo v. Diamond*, 770 So. 2d 891, 895 (La. App. 2000) ("A rental dwelling policy is designed to provide insurance coverage to the owners of property that is rented to others (or held for rental) rather than the lessees of property."); La. Rev. Stat. § 22:47(15) ("Homeowners' Insurance. A policy of insurance on a one- or two-family ***owner-occupied premises***....") (emphasis added); *see also Stills v. Mims*, 973 So. 2d 118, 121 (La. App. 2007)

11

("The removal of the risks associated with business enterprises *or rental properties* helps to lower the rates of homeowner's insurance by eliminating non-essential coverages.") (emphasis added). *Dixon* ignores this framework and ignores the very language that makes a policy a homeowners' policy, as compared to a rental dwelling policy. To interpret *Dixon* as Plaintiff suggests would create rental dwelling coverage where none exists or was intended in direct contravention to the unambiguous language of the policy. That is a radical proposition, and the Court has not found any case that has followed *Dixon* on this point. The Court is convinced that the Louisiana Supreme Court would not follow *Dixon* and would not hold that the sixty-day vacancy provision in the Standard Fire Insurance Policy supersedes the "residence premises" requirement in the policy at issue here.

The "residence premises" requirement is unambiguous and creates coverage only for loss to a dwelling used by the Plaintiff as his primary residence. It is undisputed that Plaintiff, the named insured on the policy, had not used 215 Drury Lane as his private residence for over a year before the fire and instead rented it to others. Therefore, Defendant's motion for summary judgment is granted as to the dwelling, because damage to the dwelling is not covered by the plain language of the policy. But as Defendant acknowledges, the residence requirement only applies to coverage for damage to the dwelling itself, and not to the contents. Therefore the Court must address Defendant's second basis for summary judgment, which governs coverage for the dwelling and for the contents.

**4)   Summary Judgment Based on 60-Day Occupancy or Vacancy**

Defendant Metropolitan also moves for summary judgment on the basis of policy provisions that exclude coverage for damage to the structure and to contents caused by

vandalism or mischief when the property has been vacant for a period of time. The policy

excludes certain damage to personal property (contents) caused by vandalism or mischief while

the property is vacant:

> COVERAGE C – PERSONAL PROPERTY
> We will pay for sudden and accidental direct physical loss or damage to the property described in Coverage C when loss or damage is caused by SECTION I – BROAD NAMED PERILS, except as excluded in SECTION I - LOSSES WE DO NOT COVER.
> SECTION I – BROAD NAMED PERILS
> Whenever Broad Named Perils is referred to in this policy, the following causes of loss will apply for sudden and accidental direct physical loss.
> ...
> 8. Vandalism or Malicious Mischief
> We do not pay for any loss caused by any act committed in the course of the vandalism or malicious mischief including any ensuing loss or fire if the residence was vacant for more than 30 consecutive days immediately prior to the loss.

(Rec. Doc. 47-2 at 42).[9] However, as noted above, Louisiana law imposes a provision that

---

[9]The policy includes a parallel provision with respect to the structure:
COVERAGE A – DWELLING AND COVERAGE B – PRIVATE STRUCTURES
We will pay for sudden and accidental direct physical loss or damage to the property described in Coverages A and B, except as excluded in SECTION I – LOSSES WE DO NOT COVER.
...
SECTION I – LOSSES WE DO NOT COVER
...
3. We do not cover loss or damage to the property described in <u>Coverage A</u> and <u>Coverage B</u> [the structure] which results directly or indirectly from any of the following:
 ...
 K. vandalism or malicious mischief or breakage of glass and safety glazing materials, and any loss caused by any act committed in the course of the vandalism or malicious mischief including any ensuing loss or fire, if the residence was vacant for more than 30 consecutive days immediately prior to the loss. A residence premises being constructed is not considered vacant.

(Rec. Doc. 47-2 at 47). Because damage to the dwelling is not covered pursuant to the separate and independent "residence premises" provision, as explained above, the Court will analyze the vacancy provision only with respect to the contents claim.

13

excludes coverage "[w]hile a described building, whether intended for occupancy by owner or tenant, is vacant, or unoccupied beyond a period of sixty consecutive days." La. Rev. Stat. § 22:1311(F). Defendant concedes that the greater sixty-day period in the Standard Fire Insurance Policy supersedes the thirty-day period in the homeowners' policy.[10]

Neither the homeowners policy nor the Standard Fire Insurance Policy define "vacant" or "unoccupied." The parties cite several Louisiana appellate court cases interpreting those terms. Defendant cites *Boyette v. Underwriters at Lloyd's London*, 372 So. 2d 592 (La. App. 1979). In *Boyette*, it was undisputed that the insured property had been vacant for more than sixty days before a single day in which a pair of new tenants mowed the grass, "cleaned the house to some extent," and "moved therein some items of furniture and a few of their clothes," but did not spend the night. *See id.* at 593. The house burned down one day after those efforts. *Id.* On the basis of those undisputed facts, the trial court held that the property was unoccupied for sixty days prior to the loss and granted the insurer's motion for summary judgment. *See id.* at 593-94. The appellate court affirmed, concluding that "'vacancy' means empty, that is of goods and property of the insured while 'unoccupied' means the absence of or lack of regular habitation by humans." *Id.* at 594.

Defendant also cites *Miller v. Underwriters at Lloyd's London*, 398 So. 2d 654 (La. App. 1981). In *Miller*, the tenant at plaintiff's rental property moved out, removed his furnishings, and turned off the utilities. *Id.* at 656. The plaintiff then "commenced a rather protracted period

---

[10]There is a direct conflict between the thirty-day vacancy period set forth in Plaintiff's homeowners policy and the sixty-day period in the Standard Fire Insurance Policy. The vacancy term in the homeowners' policy does not "exceed" the vacancy term in the Standard policy, and therefore the statutory policy term is incorporated automatically. *See* La. Rev. Stat. § 22:1313.

of repairs to the premises," in which he "slept on the premises in a sleeping bag on several occasions." *Id.* More than sixty days after the tenant left, the property burned down and the insurance company denied coverage pursuant to a comparable "vacant or unoccupied" provision. *See id.* The appellate court reversed a judgment in favor of the plaintiff, concluding that the property was both vacant and unoccupied on those facts. *See id.* at 656-57.

Plaintiff responds by citing *Burrell v. Seguros Am. Banamex, S.A.*, 316 So. 2d 177 (La. App. 1975). In *Burrell*, the insured's foster daughter had previously lived in the insured property. *Id.* at 178. The parties stipulated that she "left her furniture and most of her clothes there, and visited the building once a week to clean it and exchange clothes," but that a fire occurred "more than 60 days after the last time anyone had slept in the building." *Id.* The insurer denied coverage on the basis of the Standard Fire Insurance Policy "vacant or unoccupied" provision. However, the appellate court affirmed the trial court's conclusion that "an apartment kept furnished and visited weekly is not 'vacant or unoccupied beyond a period of sixty consecutive days'" because "whenever the daughter was in the apartment to clean it and to exchange clothes, the apartment was occupied in an ordinary sense of the word." *See id.*

With these cases in mind, the Court finds that there is a genuine factual dispute as to whether 215 Drury Lane was vacant or occupied between March 20, 2010 (sixty days before the fire) and April 26, 2010 (when Gregory Keelen was indisputably incarcerated). As set forth above, some neighbors saw Gregory Keelen at the property in March and April, 2010, and some neighbors did not. Although in its reply brief Defendant challenges whether Plaintiff's neighbor witnesses have sufficient personal knowledge of Gregory Keelen's activities, that is the subject of cross-examination rather than a basis to discount their testimony entirely. In addition,

15

Defendant argues that Plaintiff, Gregory Keelen, and Chastity Keelen have given potentially inconsistent statements at various times regarding Gregory Keelen's residence at the property. These arguments implicate the credibility of witnesses. On summary judgment the Court must "refrain from making credibility determinations or from weighing the evidence." *E.g.*, *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). Defendant also argues that the lack of furniture or utilities at the property is dispositive as to the question of vacancy or occupancy; however, the relevant cases do not draw such a bright-line rule. While Defendant may argue those points to the trier of fact, on this summary judgment motion the Court must "draw all reasonable inferences" in favor of Plaintiff. *Id.* at 163-64.

In short, summary judgment is denied as to Defendant's coverage defense based on the question of occupancy or vacancy at 215 Drury Lane in the sixty days preceding the fire. However, summary judgment is granted as to Defendant's coverage defense based on the "residence premises" policy requirement. Accordingly, Plaintiff's claim for loss to the dwelling itself is dismissed, but Plaintiff may proceed on his claim for loss to personal property and contents covered by the policy.

**B.     Plaintiff's Motion to Exclude**

Defendant has designated George A. Hero, III as an expert witness in this matter. Mr. Hero is an engineer and a member of the National and International Associations of Fire Investigators. (Rec. Doc. 48-2 at 5-7). He inspected the property on May 25, 2010 and took a number of photographs. Mr. Hero produced a report in which he reports his observations of the property, as well as things he was told by neighbors, firefighters, and a postal worker. He draws two conclusions. First, he opines that "[t]he firemen, the evidence on the scene and the

16

laboratory report all show that the fire was intentional with the use of accelerants." (Rec. Doc. 48-2 at 2). Second, he opines that "[t]he lack of furniture and the old letters on the counter and range all show that the house had not been occupied for a long time." *Id.* at 2-3. Plaintiff seeks to exclude both opinions.

### 1) The Arson Opinion

With respect to the opinion that the fire was caused by arson, Plaintiff argues that causation of the fire is irrelevant in this case because there is no evidence suggesting Plaintiff himself played a role in causing the fire. Because Plaintiff is not implicated in the fire, he argues that any suggestion that the fire was arson would be unfairly prejudicial and should not be presented to the jury.

Defendant responds that it has asserted as a coverage defense the provision cited above, which excludes coverage for damage caused by vandalism or mischief while the property was unoccupied for a period of sixty days. Mr. Hero's opinion that the fire was caused by arson is relevant to the vandalism/mischief element of that coverage defense, and therefore Defendant argues it is admissible and not unfairly prejudicial.

Defendant is correct. It has asserted a coverage defense which requires proof that the loss resulted from "vandalism or malicious mischief ... and any loss caused by any act committed in the course of the vandalism or malicious mischief including any ensuing loss or fire, if the residence was vacant for more than 30 consecutive days immediately prior to the loss." Mr. Hero's opinion that the fire was arson is relevant to the vandalism/mischief element of that defense. Moreover, the Court can identify no meaningful risk of unfair prejudice from that opinion testimony. Accordingly, the motion is denied insofar as it seeks to prohibit Mr. Hero

17

from opining that the fire was caused by arson.

### 2) The Vacancy Opinion

Plaintiff also moves to prohibit Mr. Hero from opining that the house "had not been occupied for a long time." Plaintiff argues that the trier of fact does not require any technical or experiential expertise to decide whether or not a house was occupied. Therefore, Plaintiff argues that Mr. Hero's vacancy opinion would not assist the trier of fact, is not properly the subject of expert testimony, and should be excluded.

Defendant responds that Mr. Hero conducted a firsthand inspection of the property shortly after the fire. Therefore, he can testify as to his personal knowledge of the conditions of the property as he perceived them. Defendant also argues that Mr. Hero's opinion as to the vacancy of the property was a factor in his conclusion that the fire was arson, and should be admissible as a basis for that latter opinion.

Mr. Hero inspected the property and can testify as to the facts he personally observed. Fed. R. Evid. 602. In addition, it may be appropriate for Mr. Hero to testify regarding the basis of his opinion that the fire was caused by arson, which may include his conclusion that the house was unoccupied at the time of the fire.[11] Accordingly, Plaintiff's motion with respect to the vacancy opinion is at the very least premature. The Court may revisit the matter in the context of trial testimony.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant's motion for summary

---

[11]The Court does not address whether there is such a thing as an "occupation expert" or whether, under different circumstances, Rule 702 would permit expert opinion testimony that a house was or was not unoccupied.

judgment (Rec. Doc. 47) is GRANTED IN PART as to the "residence premises" coverage provision and DENIED IN PART as to the "vacant or unoccupied" coverage provision. IT IS FURTHER ORDERED that Plaintiff's motion to exclude (Rec. Doc. 48) is DENIED.

New Orleans, Louisiana, this 29th day of May, 2012.

_____
UNITED STATES DISTRICT JUDGE